## STATE, WILLIAM H. BRENINGER, PROSECUTOR, v. TREASURER OF THE TOWN OF BELVIDERE.

1. The power of a municipal corporation to pass a by-law or an ordinance which establishes a rule interfering with the rights of individuals or the public, must emanate from the creating body, and clear authority must be found for it in the legislative enactment under which the corporation exercises its functions of government.

2. A provision in the town charter that the common council may pass and enforce ordinances and by-laws for the suppression of gambling-houses, and such other by-laws and ordinances for the peace and good order of the town as they may deem expedient, not repugnant to the constitution or laws of this state or of the United States, does not warrant the passage of an ordinance forbidding the keeping of a billiard table for hire.

3. The general words of the statute are used in their ordinary acceptation, and authorize any such local legislation as will prevent disorder or disturbance or breach of the peace.

4. It having been decided in this court that the practice permitted by the keeper of a ten-pin alley that the loser should pay for the use of the alley, did not subject his house to indictment as a common gaming-house, the keeping of a billiard table in the same manner must be regarded as a lawful business, which cannot be outlawed by the common council under the authority given them by the legislature.

Breninger v. Belvidere.

On *certiorari* to review an ordinance of the town of Belvidere.

Argued at February Term, 1882, before Justices DEPUE, VAN SYCKEL and PARKER.

For the plaintiff, *Henry S. Harris.*

For the defendant, *J. G. Shipman & Son.*

The opinion of the court was delivered by

VAN SYCKEL, J.   An ordinance of the town of Belvidere, entitled "An ordinance for the suppression of gambling," provides that it shall not be lawful for any person to keep open within the corporate limits of said town, any room in which playing at billiards or other game is permitted for hire, ardent spirits, ale, porter, cider, lager beer, money, goods, chattels or other valuable thing, under a penalty of $50.

The treasurer of the town, by the judgment of a justice of the peace, recovered of Breninger one penalty for an alleged violation of this ordinance.

The admitted facts are, that prior to the institution of the suit Breninger opened and kept in said town a billiard-room, in which playing at billiards was allowed and carried on under the following terms, to wit: That the loser of each game should pay for the use of the table and implements, but nothing was staked on the result of the game, and no liquor or other article was sold on the premises.

Both the judgment and the ordinance are certified into this court to test their validity.

All the authority of a municipal corporation being derived from its charter, it is evident that its powers cannot be enlarged, diminished or varied by the ordinance or by-laws of the corporation.

The power to pass a by-law or an ordinance which establishes a rule interfering with the rights of individuals or the public, must emanate from the creating body, and clear au-

thority must be found for it in the legislative enactment under which the corporation exercises its functions of government. These are conceded rules of law applicable to this case. *Carron* v. *Martin*, 2 *Dutcher* 594; *Taylor* v. *Griswold*, 2 *Green* 222; *Dillon on Mun. Corp.*, § 251, and cases cited in notes.

The town claims that the requisite authority to enact this ordinance is found in section 8 of the town charter, which provides, among other things, that the common council may pass and enforce ordinances and by-laws for the suppression of gambling-houses, and such other by-laws and ordinances for the peace and good order of said town, as they may deem expedient, not repugnant to the constitution or laws of this state or of the United States.

In *State* v. *Hall*, 3 *Vroom* 158, it was decided in this court that the practice permitted by the keeper of a ten-pin alley, that the loser should pay for the use of the alley, did not subject his house to indictment as a common gaming-house.

In a recent Indiana case (*Hamilton* v. *State*, 75 *Ind.* 586,) it was held that playing for the use of the table constituted gaming within the meaning of the statute forbidding any one to keep a house to be used for gaming. The New Jersey case is cited and a distinction drawn between the indictment of a house as a public nuisance and an indictment for gaming under the statute.

The distinction is a narrow one, although the following cases furnish some support for it: *State* v. *Records*, 4 *Harr.* 554; *Ward* v. *State*, 17 *Ohio St.* 32; *State* v. *Leighton*, 3 *Foster* 167; *Mount* v. *State*, 7 *Ind.* 654; *Crawford* v. *State*, 33 *Ind.* 304; *Walker* v. *State*, 2 *Swan* 287.

No warrant, therefore, can be found for denouncing the prosecutor's house under the provision which authorizes the prohibition of gambling. The attempt to exact the penalty must fail, unless the validity of the ordinance can be rested upon the more general provision that the common council may pass ordinances for the peace and good order of the town, as they may deem expedient.

Did the legislature, by this language, confer upon the com-

Breninger v. Belvidere.

mon council of Belvidere a power of legislation, limited only by their judgment of what the peace and good order of the town might render expedient, so long as it was not contrary to the constitution or laws of this state or of the United States?

The authority would reach, under such a construction, to every department of the criminal law involving a breach of the peace. It would not only enable the common council to suppress all places of public resort and amusement, but also to forbid every occupation or employment which, in their judgment, might prove inimical in its influence to public morals. The question of expediency being committed to the common council, their judgment in that respect would not be reviewable.

If a power so extraordinary and unlimited can be delegated, the legislative intent to bestow it must be expressed in more explicit terms.

Under the Hall case, which cannot be reviewed here, the business of the prosecutor is a lawful one, and cannot be outlawed by the town council, unless the broad doctrine is asserted that it is competent to suppress every occupation which they may conceive to be detrimental to the public welfare.

This general language in the statute is used in its ordinary acceptation, and authorizes only such local legislation as will prevent disorder and disturbance or breach of the peace. If, as alleged by defendant in *certiorari*, places of this character are preparatory schools for gambling, and the practice indulged by the prosecutor removed but one short step from that vice, it is the province of the legislature to confer upon the town the power to remove the evil.

The decision in 3 *Vroom* being accepted as the law of this state, no relief can be had by an appeal to the judiciary. The ordinance was passed without authority and cannot hinder the prosecutor in the pursuit of what must be here regarded as a lawful calling.

The right of the prosecutor to review the judgment below by *certiorari*, is denied by the defendant.

The suit was not instituted in the court of small causes, but

VOL. XV.                    z

is brought under the provisions of the town charter before a justice of the peace, and an appeal is given to the common council. It is well settled that by the granting of such right of appeal the Supreme Court cannot be divested of its superintending jurisdiction. *Traphagen* v. *West Hoboken,* 10 *Vroom* 232; *Flanagan* v. *City of Plainfield, ante p.* 118.

The proceedings below are reviewable in this court by *certiorari.*

The ordinance in question, so far as it prohibits the keeping of billiards for hire, is without authority and void, and the judgment below must fall with it, but I do not think it is a case in which costs should be given against the town.